

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LAMAR JORDAN,

    Petitioner,

v.                                        Civil Action No. 3:13CV735

KEITH DAVIS,

    Respondent.

**REPORT AND RECOMMENDATION**

Lamar Jordan, a Virginia state prisoner proceeding pro se, brings this petition pursuant to 28 U.S.C. § 2254 (hereinafter, "§ 2254 Petition," ECF No. 1). The matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons that follow, it is RECOMMENDED that the § 2254 Petition be DENIED.

**A. Jordan's Claims**

Jordan was convicted in the Circuit Court of the County of Henrico ("Circuit Court") of first degree murder, discharging a firearm from a vehicle, and use of a firearm in the commission of a felony. In his § 2254 Petition, Jordan demands relief upon the following grounds:

    Claim One:     The prosecution failed to present sufficient evidence to convict Jordan of first degree murder, discharging a firearm from a vehicle, and use of a firearm in the commission of a felony.

(Mem. Supp. § 2254 Pet. 1, ECF No. 1-1).[1]

Claim Two: Counsel rendered ineffective assistance of counsel because counsel failed to object and move for a mistrial on the ground that the prosecution knowingly used false testimony to obtain a conviction.[2] (Id. at 3.)

Claim Three: Counsel rendered ineffective assistance of counsel because counsel failed to effectively impeach Ataiva Lewis. (Id. at 4.)

Claim Four: Counsel rendered ineffective assistance by failing to move for a mistrial after the prosecutor failed to introduce evidence referred to in the prosecutor's opening statement. (Id. at 6.)

Respondent has moved to dismiss because, inter alia, Jordan's claims lack merit. Jordan has responded. As explained below, it is RECOMMENDED that Jordan's claims BE DISMISSED as lacking in merit.

**B. Applicable Constraints upon Habeas Review**

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death

---

[1] The Court employs the pagination assigned to Memorandum in Support of the § 2254 Petition by the CM/ECF docketing system. Although Jordan labels his claims A through D, the Court labels these same claims One through Four.

[2] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

2

Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." Gray v. Branker, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

**C. Sufficiency of the Evidence – Claim One**

In Claim One, Jordan contends that insufficient evidence existed to convict him as the individual who fired a shot from a vehicle and killed Rayvelle Fitzgerald. A federal habeas petition warrants relief on a challenge to the sufficiency of

3

the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (citing Johnson v. Louisiana, 406 U.S. 356, 362 (1972)). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Id. at 318.

In rejecting this claim on direct appeal, the Court of Appeals of Virginia aptly summarized the evidence of Jordan's guilt as follows:

> At about 9:00 a.m. on November 7, 2008, Rayvelle Fitzgerald suffered a single gunshot wound to the chest while on Delmont Street in Essex Village, a Henrico County apartment complex.  After hearing the shot, Danielle Burwell saw Fitzgerald on the ground beside a white car.  Burwell administered CPR upon Fitzgerald until paramedics arrived.  Fitzgerald was transported to the hospital, where he was pronounced dead from the gunshot wound.  Fitzgerald had been shot with a high velocity bullet that caused extensive internal injuries.
> Alexia Derricott, Fitzgerald's girlfriend, was with him just before he was shot.  Derricott, who had spent the night at Essex Village with her friend Iesha McClure, went outside that morning after receiving a telephone call from Fitzgerald.  After a conversation with Fitzgerald, Derricott walked in the direction of McClure's apartment.  She heard the sound of a gunshot, then ran toward Fitzgerald, who had fallen to

4

the ground. Derricott knew appellant and had told him about her volatile relationship with Fitzgerald.

Ataiva Lewis was in her Essex Village apartment between 8:30 a.m. and 9:00 a.m. on November 7, 2008. She looked out her window and saw a man and woman engaged in a loud argument on Delmont Street. A two-door, red car was driving slowly on Delmont Street toward the location where the argument was occurring. The red car stopped, and the driver lit a cigarette. Lewis saw a long brown object, about two feet in length, across the driver's lap. Lewis turned toward the inside of her apartment, then heard a gunshot. Lewis looked outside again and saw the man who had been arguing on the ground bedside a white car. The red car was gone. Lewis testified that a red, two-door Acura sedan registered to appellant on the day of the shooting looked like the same car she had seen on Delmont Street just before she heard the shot.

After the shooting, the police found a single shell casing in the road on Delmont Street. The casing was of the same type that would be a part of a high velocity cartridge fired from an assault weapon such [as] an AK-47 rifle. The length of an AK-47 rifle is between two and four feet.

About a week before the shooting, Terron Shackleford saw appellant's red Acura near Essex Village. At the time, an AK-47 rifle was on the backseat of appellant's vehicle, and appellant was driving.

Lynette Robinson testified that about a month after Fitzgerald was killed, appellant gave her a ride in his red Acura. Appellant, who was married to Robinson's sister, said the police were looking for his car because he had shot "a boy" in his car. Appellant said he had meant to shoot him in the leg and did not mean to kill him. Robinson admitted having prior felony convictions.

On February 11, 2009, the police questioned appellant regarding the killing. Appellant admitted he was driving his red Acura on Delmont Street in Essex Village on the morning of November 7, 2008, Appellant said he saw Derricott and Fitzgerald on the street. According to appellant, as he approached Derricott and Fitzgerald, he heard the sound of several gunshots. Appellant said he believed several people were shooting at him with automatic weapons.

Appellant's cellular telephone records revealed that he placed calls from his phone to McClure's phone

5

>    just before the shooting. Cell towers in the area of Essex Village transmitted the calls to McClure's phone.
>        . . . .
>    Considered as a whole, the evidence proved beyond a reasonable doubt that appellant was the person who fired a weapon from the red vehicle and killed Fitzgerald. A red, two-door vehicle was seen stopped on Delmont Street near Derricott and Fitzgerald just before the shooting. Lewis saw in the lap of the driver of the red vehicle an object that could have been an AK-47 rifle. The bullet that killed Fitzgerald was fired from an assault rifle such as an AK-47. Just a week before the shooting, Shackleford had seen in appellant's car an AK-47 firearm. Appellant acknowledged to the police that he was on Delmont Street on the morning of the shooting and he was driving his red car. Moreover, appellant admitted to Robinson that he had shot someone and the police were looking for his car.

Jordan v. Commonwealth, No. 1221-10-2, at 1-4 (Va. Ct. App. Dec. 8, 2010). The foregoing evidence was more than sufficient to convict Jordan of first degree murder, firing a weapon from a vehicle, and use of a firearm in the commission of a felony. Accordingly, it is RECOMMENDED that Claim One be DISMISSED.

## D. Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must show first that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'"

Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

### 1. Claim Two

In Claim Two, Jordan faults counsel for failing to object and move for a mistrial on the grounds that the prosecution knowingly permitted Terron Shackleford and Ataiva Lewis to testify falsely at his trial.

Jordan contends that Shackleford, a prosecution witness, falsely testified that no promise had been made to him in return for his testimony against Jordan. (Mem. Supp. § 2254 Pet. 4 (citation omitted).) No evidence exists that demonstrates Shackleford lied about the existence of an explicit promise of a reduced sentence in return for his testimony.[3] Therefore, counsel reasonably eschewed objecting to Shackleford's testimony

---

[3] Shackleford readily admitted, at the time of his testimony, that he was serving a sentence for a couple of felony convictions and that he hoped to have his sentence reduced by testifying. (Oct. 14, 2009 Tr. 232.)

7

on the ground that Shackleford lied when he denied receiving a specific promise in exchange for his testimony.

With respect to Lewis, Jordan asserts that Lewis's trial testimony "changed dramatically from her Grand Jury testimony." (Id. at 3.) Jordan notes,

> When asked at trial where was the red car when she first saw it, Lewis stated that it was coming down the street and then parked where her balcony was, but she could not see inside the car, like who was driving. (10/14/09, Trial Tr. at 84). **In direct contrast, [Lewis] Grand Jury testimony was that she could see inside the vehicle and the person driving.** (01/21/09, Grand Jury Trial Tr. at 7).
> When asked did she see anything in the driver's lap and what was it, Lewis stated that she saw something long and brown, but didn't know what it was. (10/14/09, Trial Tr. at 86). **In direct contrast, [Lewis] Grand Jury testimony was that she seen a gun across the driver's lap.** (01/21/09, Grand Jury Tr. at 7).
> When asked how many shots did she hear and did she remember the type of car it was, Lewis testified that she only heard one shot and she did not remember the type of car, only that it was a red car. (10/14/09, Trial Tr. at 88). **In direct contrast, [Lewis] Grand Jury testimony was that she heard shots fired from the vehicle and that it was a red Acura, 90's type model.** (01/21/09, Grand Jury Tr. at 7, 12).

(Id. at 3-4 (alterations in original) (spelling corrected).)

Lewis's trial testimony was vaguer and significantly more favorable to Jordan than her damning grand jury testimony. Moreover, there is no evidence that suggests Lewis testified falsely, much less that the prosecution knew she testified falsely. Therefore, counsel wisely eschewed the objections and the motion Jordan urges here. Accordingly, Jordan fails to

8

demonstrate deficiency or prejudice with respect to Lewis's testimony.

It is RECOMMENDED that Claim Two be DISMISSED because Jordan fails to demonstrate deficiency or prejudice.

### 2. Claim Three

In Claim Three, Jordan faults counsel for failing to cross-examine Lewis with respect to the inconsistencies between her grand jury and trial testimony. As noted above, Lewis's grand jury testimony was significantly more damaging to Jordan than her trial testimony.[4] Therefore, counsel reasonably refrained from the cross-examination Jordan urges here. Accordingly, it is RECOMMENDED that Claim Three be DISMISSED because Jordan fails to demonstrate deficiency or prejudice.

### 3. Claim Four

During its opening statement, the prosecution referred to Lewis's testimony about seeing a gun in the lap of the driver of the red Acura and seeing McClure go out onto the balcony of an neighboring apartment. In Claim Four, Jordan asserts that counsel acted deficiently by failing to move for a mistrial when

---

[4] In addition to Lewis's testimony discussed in Claim Two, Jordan notes that, during her grand jury testimony, Lewis testified that a woman on another balcony (identified by other testimony as Iesha McClure) had waived to the driver of the Acura and directed him towards the victim. (Mem. Supp. § 2254 Pet. 5 (citation omitted).) Lewis failed to recall this fact in her trial testimony. Counsel reasonably declined to remind Lewis of this fact because it supported the prosecution's theory that Iesha McClure had called Jordan and arranged for him to shoot Fitzgerald. (Oct. 15, 2009 Tr. 389-90.)

9

the prosecution subsequently failed to introduce this testimony from Lewis. Because "an opening statement is an objective summary of evidence the government reasonably expects to produce, a subsequent failure in proof will not necessarily result in a mistrial." United States v. Retos, 25 F.3d 1220, 1226 (3d Cir. 1994) (internal quotation marks omitted) (citation omitted). The prosecution reasonably anticipated that Lewis would testify consistently with her grand jury testimony when framing its open argument. That, apparently, failed to occur. Such an omission fails to provide a viable basis for a mistrial. "Many things might happen during the course of the trial which would prevent the presentation of all the evidence described in advance. Certainly not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given." Frazier v. Cupp, 394 U.S. 731, 736 (1969). The Circuit Court provided such an instruction here.[5]

Given the foregoing circumstances, counsel reasonably refrained from moving for a mistrial. Instead, counsel chose to emphasize this omission in his closing argument to demonstrate how the Commonwealth "failed to follow through with their promises" with respect to the evidence. (Oct. 15, 2009 Tr.

---

[5] "What the attorneys tell you in opening statement is not evidence. It is just their view on what they feel the evidence will show." (Oct. 14, 2009 Tr. 58.)

10

417.) As Jordan fails to demonstrate that counsel acted deficiently or that he was prejudiced, it is RECOMMENDED that Claim Four be DISMISSED.

### E. Conclusion

It is RECOMMENDED that the Court GRANT Respondent's Motion to Dismiss (ECF No. 13) and DISMISS Jordan's claims. It is further RECOMMENDED that § 2254 Petition be DENIED and the action be DISMISSED.

Jordan is advised that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Such objections should be numbered and identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. See Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation may result in the dismissal of his claims, and it may also preclude further review or appeal from such judgment. See Carr v. Hutto, 737 F.2d 433, 434 (4th Cir. 1984).

The Clerk is DIRECTED to send a copy of the Report and Recommendation to Jordan and counsel of record.

/s/ *Roderick C. Young*
Roderick C. Young
United States Magistrate Judge

Date: May 20, 2015
Richmond, Virginia